NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN L. MASON and MARY MASON,

Plaintiffs,

v.

CHASE HOME FINANCE, LLC,
EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN, and TRANSUNION,

Defendants.

**Civil Action No. 11-04144 (SRC)**

**OPINION**

**CHESLER**, District Judge

This matter is before the Court on the motion for summary judgment brought by Defendant Chase Home Finance, LLC ("Defendant" or "CHF").[1] [Docket Entry 65.] Plaintiffs Kevin L. Mason and Mary Mason ("Plaintiffs") oppose the motion. [Docket Entry 72.] At the Court's request, the parties have provided supplemental briefing regarding Plaintiffs' Fair Credit Reporting Act ("FCRA") claim. [Docket Entries 75 & 76.] The Court will rule on the papers submitted, and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendant's motion will be denied as to Plaintiff's FCRA claim and granted as to Plaintiffs' New Jersey Consumer Fraud Act and intentional infliction of emotional distress claims.

## BACKGROUND

This lawsuit arises from a contested foreclosure proceeding, but the facts relevant to this

---

[1] Although CHF was named in the Complaint, JPMorgan Chase Bank, N.A. is the true party in interest, as successor-by-merger to CHF. For consistency, the Court will refer to the moving Defendant as CHF.

motion are undisputed. Plaintiffs Kevin and Mary Mason own a home in Orange, New Jersey. In 1999, Kevin executed a note and mortgage on the home in favor of a third-party, Advanta National Bank, in order to secure a loan on the home. Defendant CHF services this loan. In 2010, after a disagreement about whether Plaintiffs were required to pay property taxes and homeowner's insurance directly to the City of Orange or into escrow, CHF "filed a foreclosure complaint against [Plaintiffs] in the Superior Court of New Jersey, Essex County . . . ." (Opp. Br. at 4.) According to Plaintiffs' mortgage agreement, Plaintiffs were indeed required to pay their taxes and insurance into escrow. (See Stewart Suppl. Cert., Ex. A, at 6 ("Borrower shall pay to Lender on the day monthly payments are due under the Note . . . yearly taxes . . . [and] yearly hazard or property insurance premiums . . . . These items are called 'Escrow Items.'").) Plaintiffs, however, contested the foreclosure action, provided CHF with proof that they were current on their tax and insurance payments, and in October 2011 CHF consented to a dismissal of the foreclosure complaint. (Defs.' L.Civ.R. 56.1 Statement ¶¶ 32, 34.)

At some point, CHF reported the existence of the state court foreclosure action to three Consumer Reporting Agencies ("CRAs"), Defendants Equifax Information Services, LLC, Experian, and Transunion.[2] In February 2011, Plaintiffs filed a "Notice of Dispute" with the three CRA Defendants, challenging "the accuracy of the information provided by Chase." (Plfs.' L.Civ.R. 56.1 Statement ¶ 36.)[3] In response to Plaintiffs' letter (and subsequent communications

---

[2] The CRA Defendants have settled with Plaintiffs and been dismissed with prejudice from the case. [See Docket Entries 29, 32, 41.] CHF is the only Defendant that remains.

[3] Plaintiffs would be well served to review the text of the Local Civil Rules before engaging in motion practice in this Court; among other things, the Local Rules state that "[e]ach statement of material facts [submitted in connection with a summary judgment motion] shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law." L.Civ.R.56.1(a). Plaintiffs' Rule 56.1 statement violates both of these provisions. Courts in this District have not hesitated to deem the movant's Rule 56.1 statement undisputed when the opponent's statement flouts the procedural aspects of the Rule. See Schneider v. Shah, No. 11-

with Plaintiffs' counsel) Defendant Experian requested on three separate occasions that CHF verify the existence of a foreclosure action against Plaintiffs; Chase verified that "a foreclosure proceeding had been initiated" against Plaintiffs." (See id. at ¶¶ 43-44; see also Iwanski Decl. ¶¶ 7-9.) No party has submitted evidence that would tend to indicate that CHF supplemented its report regarding the foreclosure action with information regarding the disputed nature of the action, or its dismissal.[4]

The crux of this lawsuit is that CHF's decision to report the state court foreclosure action to the CRA Defendants and subsequently verify this information without supplementing it violates the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b). Plaintiffs also assert two state law causes of action. First, Plaintiffs allege that CHF's actions violate the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1 to -20. Second, Plaintiffs allege that CHF's actions in pursuing a foreclosure were so "extreme and outrageous" as to constitute the intentional infliction of emotional distress ("IIED") upon Plaintiffs. (Opp. Br. at 26.) A third state law cause of action, for defamation, was withdrawn during briefing. (See id. at 31.) CHF now moves for summary judgment on the three remaining claims.

---

2266 (SRC), 2012 WL 1161584, at *3 (D.N.J. Apr. 9, 2012), aff'd, 507 F. App'x 132 (3d Cir.); McCann v. Unum Provident, 921 F. Supp. 2d 353, 358-59 (D.N.J. 2013). Such measures are unnecessary here, as the Court would reach the same outcome even if it ignored Plaintiffs' factual submissions.

[4] In its supplemental brief, CHF argues that "Plaintiff has not claimed that Chase failed to report the debt as disputed." (See Defs.' Supplement Br., at 3.) CHF itself, however, has submitted evidence that tends to indicate that CHF did nothing more than "verify" the existence of the foreclosure action. (See Defs.' L.Civ.R. 56.1 Statement ¶ 37; see also Reply Br. at 4 ("[O]nce Chase received notice from a [CRA] that" Plaintiffs disputed evidence on a credit report, "Chase was required to verify that a foreclosure proceeding had in fact been initiated, a matter of public record.").) The Court can discern no difference between CHF verifying its report about the foreclosure action without more and CHF failing to report that the foreclosure action was a disputed credit entry and was dismissed voluntarily. It stands to reason that had CHF supplemented its initial report regarding the foreclosure with information that the foreclosure was disputed or dismissed, CHF would have submitted evidence to the Court indicating as much.

**SUMMARY JUDGMENT STANDARD**

Summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v.

Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

### A. Plaintiffs' FCRA Claim

The FCRA contemplates two types of defendant. The first is the consumer reporting or "credit rating" agency, *e.g.*, Equifax, Experian, and the like. As the Third Circuit has stated, "the consumer reporting agency is the central focus of any private litigation." SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 359 (3d Cir. 2011) (citing Chiang v. MBNA, 620 F.3d 30, 30 (1st Cir 2010)). This lawsuit, however, pertains to the latter breed of FCRA defendant, the creditor itself – what the statute calls a "furnisher[] of information." See id. at 357 (citing 15 U.S.C. § 1681s-2). Two provisions of the FCRA address the responsibilities of furnishers of

5

information. The first, 15 U.S.C. § 1681s-2(a), requires furnishers to "provide accurate information" to the CRAs. Section 1681s-2(a), however, is not enforceable by private parties. SimmsParris, 652 F.3d at 359 ("[plaintiff], along with all private litigants, is unable to maintain a cause of action under 15 U.S.C. § 1681s-2(a)). As such, consumers that bring an FCRA suit against a furnisher of information must do so pursuant to § 1681s-2(b), which provides a private mechanism by which to enforce a furnisher's duty to investigate and correct "incomplete or inaccurate" information. Pursuant to the statute, after a furnisher receives "notice . . . of a dispute with regard to the completeness or accuracy of any information provided . . . to a [CRA]," the furnisher must

> (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the [CRA] . . . ; (C) report the results of the investigation to the [CRA]; (D) if the investigation finds that the information is incomplete or inaccurate, report [the results of the investigation] to all other [CRAs] to which the [furnisher] furnished the [disputed] information . . . ; and (E) [modify, delete, or permanently block the reporting of disputed information that the furnisher finds inaccurate, incomplete, or unverifiable after reinvestigation.]

§ 1681s-2(b)(1); see also Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1179 (10th Cir. 2013).

Plaintiffs argue that CHF's report regarding the foreclosure action, without a notation that the foreclosure was disputed or voluntarily dismissed by CHF, was an "inaccurate" entry on their credit report within the ambit of § 1681s-2(b)(1) that CHF did not correct after investigation. (See Opp. Br. at 14.)[5] Initially, the Court notes that the furnisher's duty to investigate only ever arises after a consumer first alerts a CRA that allegedly inaccurate information has been

---

[5] Plaintiffs also argue that "[p]roviding the original information" about the foreclosure to the CRAs independently violated the FCRA. (Opp. Br. at 14.) The FCRA provisions that require furnishers to provide accurate information to CRAs, however, are not enforceable by consumers in private lawsuits. See SimmsParris, 652 F.3d at 358.

furnished to it and the CRA then alerts the furnisher that a consumer complaint has been lodged. See SimmsParris, 652 F.3d at 359. These prerequisites, however, are not at issue here. The summary judgment record is sufficient, at a minimum, to create genuine disputes of material fact as to these statutory requirements, and CHF does not argue otherwise. (See Def.'s Response To Plf.'s L.Civ.R. 56.1 Statement ¶¶ 43-44 (explaining that Plaintiffs filed a notice of dispute with the CRA Defendants regarding the foreclosure and that Experian notified CHF of the dispute).).

Instead, CHF argues that it had no duty to modify, withdraw, or supplement the information it provided about the foreclosure proceeding because the filing of a foreclosure against Plaintiffs was a matter of "public record," and therefore not false. (See id. at 6.) In short, CHF equates "not false" with "accurate" for purposes of the FCRA. This argument raises the question, as of yet unanswered by the Third Circuit, of what constitutes "inaccurate information" in the context of § 1681s-2(b). The resolution of this question is critical to the survival of Plaintiffs' FCRA claim. If CHF is correct, and a furnisher's duty does not extend beyond correcting information that is patently false, then judgment in CHF's favor would be warranted, as neither party disputes that CHF indeed commenced a foreclosure proceeding against Plaintiffs. If on the other hand information that is not clearly inaccurate can violate § 1681s-2(b) by being incomplete or misleading to some degree, there would appear to be a genuine issue as to whether CHF violated the FCRA by failing to clarify that Plaintiffs disputed the foreclosure action and that the action was dismissed by CHF voluntarily. Summary judgment would therefore be inappropriate.

As stated, the Third Circuit has not weighed in on this issue. But a number of circuit court of appeals have addressed it and rejected CHF's interpretation of § 1681s-2(b). The

Fourth, Sixth, Ninth, and Tenth Circuits have all held that § 1681s-2(b) requires furnishers to correct both "'false information,' which is 'clearly inaccurate'" and "information provided 'in such a manner as to create a materially misleading impression . . . .'" Llewellyn, 711 F.3d at 1186 (quoting Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 617 (6th Cir. 2012)); see also Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162-63 (9th Cir. 2009); Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008). This rule has its genesis in Saunders, a case in which the Fourth Circuit affirmed a district court's denial of summary judgment on an FCRA claim brought pursuant to § 1681s-2(b) against a furnisher of credit information. 526 F.3d at 145. Similar to the argument advanced by CHF here, the furnisher in Saunders argued that "reporting a debt without reporting its disputed nature can *never* be deemed inaccurate . . . ." Id. at 149 (emphasis in original). The Fourth Circuit rejected this argument in light of the FCRA's text, and in particular the requirement that furnishers "determine whether the information they previously reported to a CRA is 'incomplete or inaccurate.'" Id. at 148 (quoting § 1681s-2(b)(1)(D)). Saunders found that the FCRA's use of the word "incomplete" evidenced Congress's clear intent for furnishers "to review [credit] reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." See id. The Ninth Circuit, discussing Saunders, states its core holding thusly: credit information provided to a CRA by a furnisher "can be 'incomplete or misleading' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" Gorman, 584 F.3d at 1163 (quotation omitted).

This rationale has recently been applied by the Tenth Circuit to reverse an award of

8

summary judgment in circumstances similar to this case. See Llewellyn, 711 F.3d at 1185-87. Llewellyn concerned a dispute between a homeowner and Ocwen, a servicer of home loans. Id. at 1178. Confusion arose after the homeowner refinanced his loan but did not inform the refinancing agent that the loan was serviced by Ocwen. See id. at 1176. After failing to receive payments on the loan for two months, Ocwen sent the homeowner a foreclosure letter and began providing to CRAs "negative credit report[s] regarding" the homeowner. Id. at 1176-77. The homeowner informed Ocwen about his refinancing, certain payments were then made to Ocwen, and eventually the homeowner disputed the accuracy of Ocwen's negative credit reports with TransUnion, a CRA to whom Ocwen has sent negative information about the homeowner. See id. at 1176-77. Despite assertions to the contrary made by Ocwen's foreclosure counsel, no action was taken to correct or clarify the negative information sent by Ocwen to the CRA's. See id. at 1178.

The homeowner brought suit against Ocwen for, *inter alia*, violation of § 1681s-2(b). On appeal, Ocwen argued that summary judgment was properly entered because the "reporting of Plaintiff's nonpayment of the [refinanced] loan was accurate and cannot give rise to an FCRA violation." 711 F.3d at 1185. The Tenth Circuit, applying Saunders, found Ocwen's argument insufficient to support an award of summary judgment, stating that a "jury could reasonably conclude that [the defendant's] decision to report the debt without *any* mention of a dispute was misleading in such a way and to such an extent that it can be expected to have an adverse effect[.]" Id. at 1186 (emphasis in original) (quoting Saunders, 526 F.3d at 150).

The Court is persuaded by these decisions. Recognizing an FCRA cause of action based on a sin of omission – *i.e.*, the decision not to report material information regarding a disputed

9

credit entry – helps to further the FCRA's core purpose, which is "to protect against 'unfair credit reporting methods.'" Gorman, 584 F.3d at 1163 (quoting § 1681(a)(1)). A contrary rule would allow creditors to take *in terrorem* advantage of the threat of a negative credit report to force consumers into paying debts that they could otherwise meritoriously dispute. See id. On the other hand, it cannot be the case that a furnisher violates the FCRA every time it investigates a debt, foreclosure, or similar information but fails to report that the debt or foreclosure is disputed by the consumer. Thus, courts have held that failing to report a dispute is actionable under the FCRA where "the finder of fact" finds that the omission was materially and adversely misleading. See, e.g., Saunders, 526 F.3d at 150; Boggio, 696 F.3d at 618. In the words of the Ninth Circuit,

> a furnisher does not report "incomplete or inaccurate" information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading. It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b).

Gorman, 584 F.3d at 1163.

In sum, the Court rejects the position that a furnisher of information only ever violates § 1681s-2(b) by failing to modify patently false information provided to a CRA. Once a furnisher undertakes an investigation pursuant to § 1681s-2(b), it has an affirmative duty to "verify that [it is] in fact reporting complete and accurate information to the CRAs . . . ." Gorman, 584 F.3d at 1164. Part of that duty is reporting to the CRAs that a consumer disputes information furnished to them, "at least where the consumer's dispute is 'a bona fide dispute, a dispute that could

10

materially alter how the reported debt is understood.'" Boggio, 696 F.3d at 618 (quoting Gorman, 584 F.3d at 1163).

Applying the foregoing principles, it is apparent that CHF is not entitled to judgment as a matter of law on the FCRA claim. The summary judgment record, drawing all justifiable inferences in Plaintiffs' favor, is sufficient to establish a genuine issue of fact as to the bona fides of Plaintiffs' dispute regarding the foreclosure action reported by CHF to the CRAs. A trier of fact might, for instance, find that the dispute is meritless and thus immaterial, because Plaintiffs were obligated by their mortgage to pay taxes and insurance into escrow, and thus they should not be heard to complain about the reporting of a foreclosure proceeding brought to enforce the rights of their mortgage servicer. On the other hand, a trier of fact might find that CHF's decision to verify the foreclosure without any mention of other material facts, with knowledge that Plaintiffs were current on their tax and insurance payments and that the foreclosure proceeding was to be dismissed, was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiffs. See Saunders, 526 F.3d at 150. In such a circumstance, it would be inappropriate for the Court to decide as a matter of law that CHF did not violate the FCRA when it verified the foreclosure action to the CRAs but failed to clarify the circumstances surrounding the foreclosure. As such, the Court will deny CHF's motion for summary judgment on Plaintiffs' FCRA claim.[6]

---

[6] CHF's moving brief is exclusively devoted to the argument that the FCRA claim is a "collateral attack" on the legal validity of their mortgage and therefore insufficient as a matter of law. (Mov. Br. at 6.) As CHF itself points out, no court in the Third Circuit has applied a collateral attack rationale to an FCRA claim brought against a furnisher. Moreover, the cases CHF cites are distinguishable, as they discuss claims brought pursuant to § 1681i or § 1681e(b), not § 1681s-2(b). See, e.g., DeAndrade v. Trans Union LLC, 523 F.3d 61, 65 (1st Cir. 2008); Fashakin v. Nextel Commc'ns., No. 05-cv-3080 (RRM), 2009 WL 790350, at *10-11 (E.D.N.Y. Mar. 25, 2009). That a "collateral attack" bar should apply to CRAs in particular makes sense. "FCRA [c]laims brought against CRAs based on a legal dispute of an underlying debt raise

### B. The CFA Claim

CHF next moves for summary judgment on Plaintiffs' CFA claim. The CFA makes it unlawful for a person to use or employ "any unconscionable commercial practice, deception, fraud . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . ." N.J. Stat. Ann. § 56:8-2. A CFA claim involves three elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC, 655 F. Supp. 2d 473, 504 (D.N.J. 2009) (quoting Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009)). "Unlawful conduct" under the Act is limited to "affirmative misrepresentation[s], . . . the knowing omission or concealment of a material fact, . . . or a violation of a specific regulation promulgated under the CFA." Gupta v. Asha Enters., LLC, 27 A.3d 953, 959 (N.J. Super. Ct. App. Div. 2011) (quotation and marks omitted).

Initially, the Court agrees with CHF that it is unlikely the CFA applies to the conduct complained of here. (See Mov. Br. at 13.) The CFA by its terms only concerns "acts taken in

---

[collateral attack] concerns . . . because the creditor is not a party to the [FCRA] suit, while claims against furnishers . . . do not raise this consideration because the furnisher *is* the creditor on the underlying debt." Saunders, 526 F.3d at 150.

To the extent that Chiang v. Verizon New England Inc., 595 F.3d 26 (1st Cir. 2010), discusses § 1681s-2(b), the Court is not persuaded that its principles are applicable here, for the simple reason that Chiang explored the scope of a furnisher's duty to conduct a reasonable investigation, not to report complete and accurate information once an investigation was commenced. See id. at 36-37 ("We hold that the reasonableness of the investigation is to be determined by an objective standard."). Indeed, Chiang itself expressly states that it is not a case about the "incompleteness" of reported information. See id. at 37 n.9. In all events, as explained above the key factual dispute here is whether or not the information provided by CHF to the CRAs regarding the foreclosure action was complete and accurate within the ambit of § 1681s-2(b). The existence of this fact dispute precludes the entry of summary judgment, regardless of the Plaintiffs' position as to the legal validity of the foreclosure action filed by CHF.

connection with the sale or advertisement of . . . merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . ." In light of this language, the Third Circuit has held that a CFA plaintiff fails to state a cognizable claim where "the complaint is not based on [the] . . . marketing or sale of merchandise or services to him." Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 35 (3d Cir. 2011) ("[T]he reach of the [NJCFA] is intended to encompass only consumer oriented commercial transactions involving the sale of merchandise or services." (quotation omitted)). Elsewhere, former Chief Judge Brown has held "the statute on its face does not provide a right of action to debtors contesting the actions of the creditor." Nicholls v. Portfolio Recovery Assocs., LLC, No. 09-cv-5714 (GEB), 2010 WL 1257738, at *5 (D.N.J. Mar. 29, 2010) (citing Joe Hand Promotions, Inc. v. Mills, 567 F. Supp. 2d 719, 723-24 (D.N.J. 2008)); see also Chulsky v. Hudson Law Offices, P.C., 777 F. Supp. 2d 823, 847 (D.N.J. 2011) (holding the CFA does not apply to "the debt collection activities of a debt buyer of defaulted credit card debt"). These decisions, when read together with the text of the Act itself, tend to indicate that CHF's conduct, even if proved at trial, is not of the type the CFA was intended to remedy. The Court, however, is unaware of any New Jersey state or federal decision that holds that the actions of a mortgage servicer are *per se* insulated from CFA liability; thus, the Court will for the purposes of this motion assume *arguendo* that a mortgage servicer's practices could, where appropriate, fall within the CFA's ambit. Cf. Jefferson Loan Co., Inc. v. Session, 938 A.2d 169, 181 (N.J. Sup. Ct. App. Div. 2008) (holding that the assignee of a "retail installment sales contract" can be liable for "its own unconscionable commercial practices . . . related to its repossession and collection practices").

Summary judgment on the CFA claim is still warranted. Plaintiffs simply fail to submit

13

any proof that CHF engaged in any unconscionable, deceptive, or fraudulent conduct. On this record, the worst that can be said about CHF's behavior is that it was a misguided effort to force Plaintiffs to pay their taxes and insurance into escrow, which they were required to do by their mortgage agreement. (See Stewart Suppl. Cert., Ex. A, at 6.) According to Plaintiffs' own deposition testimony, they were occasionally late in making tax and insurance payments to the Town of Orange. (Stewart Cert. Ex. A, at 12.) Thus, CHF had legitimate reasons to demand that Plaintiffs act in accordance with their mortgage agreement and make those payments directly to CHF – indeed, the very reason for a mortgage escrow requirement is to ensure the lender's collateral is not imperiled by, among other things, tax liens or a lapse in hazard insurance coverage.

Plaintiffs opposition, instead of providing "sufficient evidence to allow a jury to find in its favor" on the CFA claim, see Gleason, 243 F.3d at 138, directs the Court to review Plaintiffs' Local Civil Rule 56.1 statement and "all attached exhibits." (Opp. Br. at 24.) Plaintiffs then proceed to make sweeping and incendiary legal conclusions, which amount to allegations that CHF tried to "illegally take the Masons' home" through "harassing and unconscionable business practices that caused the Masons' years of stress and misery." (See id.) This approach is akin to, and misguided as, the plaintiff who attempts to withstand a Rule 12(b)(6) motion by block-quoting portions of the Complaint and saying "these allegations sufficiently state a claim for relief." Moreover, a review of the evidence in the summary judgment record reveals no facts from which a reasonable juror could conclude that CHF made affirmative misrepresentations or knowingly omitted material facts while enforcing its rights under the mortgage agreement. It

14

follows that no genuine issue of material fact exists as to the first element of Plaintiffs' CFA claim, and CHF is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

C.       The IIED Claim

The Court will also grant summary judgment on Plaintiffs' IIED claim. It is well established that under New Jersey law an IIED claim can only succeed by showing, among other elements, that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Subbe-Hirt v. Baccigalupi, 94 F.3d 111, 114 (3d Cir. 1996). Thus, an IIED cause of action contemplates conduct that is far more wanton than CHF's in this case, even when viewing the record in the light most favorable to Plaintiffs. For instance, the Third Circuit has found summary judgment on an IIED claim was inappropriate where an employer relentlessly targeted his employee in an attempt to get her to resign, all while knowing the employee was ordered by her doctor to avoid the stress he was deliberately subjecting her to. See id. at 115. Recently, a decision from this District similarly found summary judgment inappropriate where the record contained evidence that defendants "who owed a duty to . . . customers receiving therapeutic, if not quasi-medical treatments" at their health spa "tolerat[ed] the presence and apparent use of illegal and potentially harmful lancets" there. See Denisco v. Boardwalk Regency Corp., No. 10-cv-3612 (JBS/AMD), 2013 WL 179484, at *9-10 (D.N.J. Jan. 16, 2013). Denisco found the defendant's conduct was "an outrageous and extreme abdication of responsibility." See id. at *10. Such unjustifiable conduct is a far cry from that which is presently before the Court.

Plaintiffs argument to the contrary is that CHF instituted foreclosure proceedings despite knowing that Plaintiffs were up-to-date on tax and insurance payments; such behavior is, according to Plaintiffs, "sufficiently extreme and outrageous" to be "actionable under a claim for [IIED]." (Opp. Br. at 28.) Not so. All the summary judgment record tends to indicate is an attempt by a mortgage servicer to require the mortgagor to comply with the terms of the mortgage, which explicitly requires the payment of taxes and insurance premiums into escrow. "The actor is never liable . . . where he has done no more than insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." See Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1054-55 (D.N.J. 1990) (quoting Restatement (Second) of Torts § 46 cmt. g). Despite Plaintiffs' conclusory and unsubstantiated statements to the contrary, nothing in the record indicates impermissible behavior on the part of CHF with a level of outrageousness sufficient to create a triable IIED claim. As such, summary judgment will be entered in CHF's favor on that claim as well.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment as to the Consumer Fraud Act and intentional infliction of emotional distress claims. Genuine fact issues preclude the entry of judgment as a matter of law as to the Fair Credit Reporting Act claim  An appropriate form of Order accompanies this Opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: January 6, 2014